## UNITED STATES *v.* BARRINGER.

APPEAL FROM THE COURT OF CLAIMS.

No. 252. Argued January 5, 1903.—Decided February 23, 1903.

The provisions in the sundry civil appropriation act of June 11, 1896, and in the prior acts of Congress referred to in the opinion, in regard to leaves of absence to the employés of the Government Printing Office, and for *pro rata* extra pay to those not receiving leaves of absence, relate only to permanent employés, or employés *regularly* employed on the Congressional Record and do not relate to temporary employés.

This construction of the statutes referred to is in accord with the interpretation placed thereon by the Public Printer and also by Congress in appropriating for the payment of such extra pay allowed in lieu of such leaves of absence.

THE findings of the Court of Claims upon which it predicated the conclusion that the plaintiff was entitled to judgment against the United States are as follows:

"I. The claimant, Arthur B. Barringer, was from time to time employed as a compositor in the Government Printing

Office during the following periods : December 31, 1895, to February 26, 1896, inclusive; July 2, 1897, to July 31, 1897, inclusive; December 10, 1897, to July 16, 1898, inclusive; October 24, 1898, to March 4, 1899, inclusive ; October 28, 1899, to April 27, 1900, inclusive, aggregating one (1) year, eight (8) months and twelve (12) days.

"II. During his term of service as such he was paid at the rate of three dollars and twenty cents ($3.20) per diem of eight hours for the time served prior to July 1, 1899, amounting to one (1) year, two (2) months and twelve (12) days, and at the rate of four dollars ($4) a day for such service rendered after July 1, 1899, amounting to six (6) months.

"III. He was not during any of the times of his employment allowed leave of absence or *pro rata* pay for leave of absence. If allowed leave of absence of thirty (30) days a year, he would have been entitled to fifty-one (51) days' leave.

"If instead of taking such leave he had been paid *pro rata* for the same, he would have been paid three dollars and twenty cents ($3.20) a day for thirty-six (36) days and four dollars ($4) a day for fifteen (15) days, amounting to one hundred and seventy-five dollars and twenty cents ($175.20).

"IV. The claimant did not, at any time during his several terms of service, set forth in finding I, apply for a leave of absence or for a money equivalent for the same. No leave of absence was granted or allowed to the claimant, for the reason that under the rules adopted by the Public Printer regarding leaves of absence persons temporarily employed were not granted leave.

"V. All employés of the Government Printing Office in service from the 1st of July, 1886, to the 30th of June, 1895, whether permanent or temporary, have been paid for all accrued but unused leaves of absence. The last of the appropriations for such unused leaves was that of fifty-seven thousand eight hundred and fifty-nine dollars and sixty cents ($57,859.60), made by the act of July 19, 1897, 30 Stat. 134, and was based on an estimate of the Public Printer, who in transmitting the same to the Senate informed that body that it included 'many employés whose terms of service in the office were only for periods of

less than one year,' and that 'the amounts of *pro rata* leave which accrued to such persons are herewith included in the respective years in which they were earned.' " 37 C. Cl. 1.

*Mr. Assistant Attorney General Pradt* for appellant. *Mr. Assistant Attorney Anderson* was on the brief.

*Mr. George A. King* for appellee. *Mr. William B. King* was with him on the brief.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

Although the court below found that among the rules for the government of the Printing Office adopted by the Public Printer, in pursuance of power conferred by law, there was a rule forbidding the allowance of leaves of absence to temporary employés, the court in effect treated the rule in question as void, since it assumed that, by the acts of Congress governing the Printing Office, temporary employés of the office were entitled to leave of absence with pay. The court deemed that the duration of such leave of absence was such proportion of the yearly annual leave allowed to permanent employés as the period of service of the temporary employé in each year bore to a year's employment. From the premise of law thus assumed the court held that where a temporary employé had not been allowed his leave of absence because of the enforcement by the Public Printer of the rule denying the right to such leave, the temporary employé was entitled to be paid an extra amount equal to the sum of his regular wages for the period which would have been embraced by the leave had it been granted. In effect, therefore, the conclusion of the court was that because the statutes were held to allow to a temporary employé leave of absence with regular pay, they must be construed as allowing to such person extra pay without leave, and this upon the theory that the employé who had a right to leave with pay, who had not received it under the circumstances stated, was entitled, so to speak, to a commutation in money at his regular rate of wages for the period of leave of which he had been deprived.

The conclusion thus reached was stated by the court to be exceptional and anomalous, but was deemed to be required by what was conceived to be the unambiguous purport of a provision, held to be mandatory, found in the act of June 11, 1896, making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1897. 29 Stat. 413. The provision in question was said to be entirely new in the legislation of Congress with respect to leaves of absence to the employés of the Government Printing Office. Whilst the anomalous result of the conclusion, as observed by the court below, is, we think, apparent, it would seem to us that a yet greater anomaly is involved in the premise which was taken for granted, that is, that the statutes contemplate the enjoyment by mere temporary employés of the provisions of law relating to an annual leave of absence. We think this is so, because singular as may be the conclusion that since employés enjoy the right to leave with pay, they are therefore entitled to extra pay without leave, we think it is far more singular to conceive that one who is engaged for a temporary employment, say for a day or a week or a month or so, comes within the purview of the statutes providing for annual leaves of absence.

If, however, the acts of Congress compel the adoption of the premise assumed or the conclusion drawn from it by the court, however anomalous they may be, our duty is to enforce the result. Whether the acts of Congress do either cannot be ascertained by a mere reference to the particular proviso in the appropriation act which constrained the judgment of the court below, but must be determined by an examination of the acts of Congress concerning leaves of absence to employés in the Government Printing Office from the beginning. The review of the statutes for the purpose of determining whether leave with regular pay involves the right to extra pay without leave, will also necessarily require us to examine the same statutes upon which the right, if it exists at all, of temporary employés in the Printing Office to leave of absence must rest. In proposing to first investigate such question we are not unmindful of the fact that the government at bar did not at all dispute the assumption indulged in by the lower court, but rested its

claim to reversal on other grounds. In view of the fact, however, that we must correctly administer the statutes, and that the question as to the right of a temporary employé to leave of absence has been fully presented by the appellees, we shall examine and decide it. The problems, then, for solution in the order stated are, First. Do the acts of Congress which provide for leave of absence to the employés of the Government Printing Office embrace mere temporary employés of such office? and, Second. If such employés are so embraced, do the statutes, whilst providing for leave in favor of the temporary employés with pay during the term of the leave, provide also for extra pay without leave where the leave has not been enjoyed because of a rule of the Printing Office forbidding its allowance?

The original grant of authority to allow leaves of absence, with pay, to employés of the Printing Office was the act of June 30, 1886.. 24 Stat. 91. The statute consisted of two sections, in the second of which it was provided that the act should take effect on and after the first day of July, 1886. The first section is as follows:

"That the employés of the Government Printing Office, whether employed by the piece or otherwise, be allowed a leave of absence, with pay, not exceeding fifteen days in any one fiscal year, after the service of one year and under such regulations and at such time as the Public Printer may designate. Such employés as are engaged on piece work shall receive the same rate of pay for the said fifteen days' leave as will be paid to day hands: *Provided*, That those regularly employed on the Congressional Record shall receive leave, with pay, at the close of each session, *pro rata*, for the time of such employment."

We think the employés embraced within this statute were permanent employés and not those who might be called in for temporary or emergency purposes, since the object of the statute was to provide for annual leave during each fiscal year, and the leave was allowed only after the service of one year. Any doubt as to this construction is removed by the proviso which allows a *pro rata* leave to regular employés of the Congressional Record. As the duration of the work which this class of employés performed was necessarily limited by the sessions of

Congress, it is obvious that they were considered as excluded by the general language in the prior portions of the act, and hence an exceptional provision giving them its advantages was inserted. And the proviso itself adds emphasis to the significance arising from its enactment, since it conferred the benefits only on such employés as were *regularly* employed for such work, and therefore excluded those merely called in to meet an emergency in the employment in question.

It is also obvious that the Public Printer in administering this act did not interpret it as embracing temporary employés, since the rules of his office excluded employés of that character from the grant of leaves of absence. And the appropriations made by Congress to execute the act of 1886, one of the acts being enacted by the very Congress which passed the act of 1886, serve to enforce the meaning arising on the face of the act itself. Those appropriations were thus defined: "To enable the Public Printer to comply with the provisions of the law granting fifteen days' annual leave to the employés of the Government Printing Office." (Act of August 4, 1886, making appropriations for the fiscal year ending June 30, 1887, 24 Stat. 255; act of March 3, 1887, 24 Stat. 509, and the urgency deficiency appropriation act of March 30, 1888, 25 Stat. 47, making appropriations for the fiscal year ending June 30, 1888.) From the subsequent legislation, to which we shall hereafter refer, we think that it may be inferred that those charged with the administration of the act of 1886 construed it as meaning that a year's service was necessary to give the right to receive leave of absence, and that, if after earning and enjoying leave by a year's service, before the completion of another full year, the employé severed his connection with the service, he was not entitled to any proportional leave. On August 1, 1888, an act was approved, which, with its title, reads as follows, c. 722, 25 Stat. 352:

"An act to extend the leave of absence of employés in the Government Printing Office to thirty days per annum.

"That the act entitled 'An act granting leave of absence to employés in the Government Printing Office,' approved June thirtieth, eighteen hundred and eighty-six, be so amended as to

extend the annual leave of absence therein described to thirty days in each fiscal year: *Provided*, That it shall be lawful to allow *pro rata* leave to those serving fractional parts of a year."

Clearly this act was but an amendment of the act of 1886, and did not attempt to repeal that act or to extend its benefits to classes of employés not embraced by the prior act. Its object on its face was simply to extend the period of leave of absence from fifteen to thirty days and to confer upon the permanent employés who were entitled to leave, in accordance with the terms of the previous act, an additional right to enjoy the benefits of a *pro rata* leave, if thereafter they severed their connection with the service before they had completed another entire year's service so as to be entitled to that year's leave.

Undoubtedly the statute was thus construed by the Public Printer in its administration, since he continued in force the rule forbidding leaves of absence to temporary employés, and besides construed the statute as giving the right to proportional leave of absence to only a permanent employé who had served sufficient time to earn at least one annual leave. As the act of 1888 considered and dealt with the prior law, as administered by the Public Printer in pursuance of the authority conferred upon him by the act of 1886, and as the act of 1888 conferred only a new right in one particular—that is, as to fractional leaves to permanent employés—it is not probable that, if it was intended to overthrow the construction which the Public Printer had put upon the previous act, by formulating a rule expressly excluding temporary employés from the right to leave, that some express provision on that subject would not have been incorporated into the amendatory act.

What was intended by the act of August, 1888, is moreover shown by an act passed by the very same Congress at the same session. Thus, the appropriation act for the fiscal year ending June 30, 1889, became a law on October 2, 1888. That act contained an appropriation " To enable the Public Printer to comply with the provisions of the law granting thirty days' annual leave to the employés of the Government Printing-Office." This was immediately followed by an appropriation " To pay *pro rata* leaves of absence to employés who resign or are discharged

(decision of the First Comptroller)." We have not been referred to the decision of the Comptroller to which the act adverts, nor have we been able to find it. But, the appropriation made in furtherance of the act of 1888 shows that such act was designed for the benefit solely of the regular employés, and the authority to pay *pro rata* leaves of absence which it granted was such *pro rata* leaves of absence to employés who, from the nature of their previous and permanent service, might expect to earn a full annual leave but were prevented from doing so by resignation or discharge. Appropriations of like character, couched in substantially identical language, were made for the fiscal year ending June 30, 1890, 25 Stat. 980; 26 Stat. 159; for the fiscal year ending June 30, 1891, 26 Stat. 371; and for the fiscal year ending June 30, 1892, 26 Stat. 948. Indeed, the appropriation act for the last quarter of the fiscal year ending June 30, 1890, makes clear what was the legislative conception of the meaning of the right to *pro rata* leave, granted by the amendatory act of 1888, and the character of the employés embraced by it, for that act, after appropriating a sum to pay employés entitled to annual leave of absence, added the sum necessary to pay for the *pro rata* leaves of "such" employés "who resign or are discharged."

The contention then that temporary employés were embraced within the provisions of the act of 1888 not only is in conflict with the text of that act, but is opposed to the administrative construction placed upon the act by the Public Printer charged with its execution. It is, besides, directly repugnant to the legislative interpretation of that act manifested by Congress, during a period of nearly five years, in appropriating the money for its execution.

In the appropriation acts for the fiscal year ending June 30, 1893, 1894 and 1895, 27 Stat. 388; 27 Stat. 572; 28 Stat. 41, whilst appropriations were made for the allowance of annual leaves of absence to the employés of the Government Printing Office, in substance in the same words as found in the previous acts, the clause contained in the previous acts providing for the allowance of *pro rata* leaves to such employés was omitted. It followed, therefore, that, although the act of 1888 provided for

*pro rata* leave to the regular employés, the appropriation acts for the years 1893, 1894 and 1895 were susceptible, by their silence on that subject, of the inference that they did not provide a sum to pay such *pro rata* leaves. The attention of Congress was evidently directed to this omission, since, on June 19, 1894, the deficiency appropriation act for the fiscal year of 1894, 28 Stat. 93, contained the following:

"To enable the Public Printer to pay to the employés heretofore or now employed in the Government Printing Office since July first, eighteen hundred and ninety-three, such sums as may be due them for leaves of absence, notwithstanding the fact that thirty days' leave of absence, with pay, had been granted to such persons in said fiscal year on account of service rendered in the preceding fiscal year, and also to pay all employés of the said office any leave of absence which they may have failed to obtain from the lack of necessary appropriations or other cause, sixty-five thousand dollars, or so much thereof as may be necessary.

"Hereafter the Public Printer is authorized to pay *pro rata* leave of absence out of any appropriation for leaves of absence to employés of the Government Printing Office in any fiscal year, notwithstanding the fact that thirty days' leave of absence, with pay, may have been granted to such employés in that fiscal year on account of service rendered in a previous fiscal year." 28 Stat. 94.

This act also created no new class of beneficiaries of leaves of absence. It recognized the right of permanent employés, who had for annual services in a previous fiscal year earned leave, to be granted in a succeeding year in addition their *pro rata* leave when they were prevented from completing a full year of service, by resignation or discharge, as provided in the previous statute. The act besides corrected the omission, if omission resulted, from the silence of the regular appropriation on the subject of *pro rata* leaves for the fiscal year ending June 30, 1894, and, looking to the future, provided a rule for the guidance of the Public Printer, making appropriations for leave of absence without particular specification applicable to *pro rata* leaves in cases where they were allowed by law. All

the reasoning previously adverted to on the subject of the prior acts is applicable to this, and constitutes but another confirmation by Congress of the settled construction excluding temporary employés from the operation of the provisions as to leave of absence. It would seem from a document, to which we shall have occasion hereafter to more particularly advert, that the construction of the *pro rata* leave of absence clause was somewhat widened in its practical administration after that, from and including the fiscal year 1893, by allowing a *pro rata* leave to a permanent employé who had not served a year, and therefore had not earned the full leave of thirty days because of the termination of his permanent employment, by resignation or discharge, before the completion of the year. The exact origin of this broadening of the construction of the act has not been made manifest, but it is inferable that it arose from expressions used in an opinion of the acting Comptroller of the Treasury of date July 3, 1894. Dec. First Comp. 1893–1894, p. 260. Whilst the ruling in question was subsequently somewhat modified, such modification had no relation to the particular expressions in the opinion lending themselves to the construction in question. 3 Dec. Comp. Treas. 28.

In 1895 a general act relative to the conduct of the Government Printing Office was passed. 28 Stat. 601. The twenty-third section of that act, in effect, reënacted and recapitulated the existing laws on the subject of leaves of absence to the employés of the Government Printing Office, as follows:

"The employés of the Government Printing Office, whether employed by the piece or otherwise, shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year under such regulations and at such times as the Public Printer may designate at the rate of pay received by them during the time in which said leave was earned; but such leaves of absence shall not be allowed to accumulate from year to year. Such employés as are engaged on piece work shall receive the same rate of pay for the said thirty days' leave as will be paid to day hands: *Provided*, That those regularly employed on the Congressional Record shall receive leave, with pay, at the close of each session, *pro rata* for the time of

such employment: *And provided further*, That it shall be lawful to allow *pro rata* leave to those serving fractional parts of the year."

The text of this section contains nothing which can, we think, be construed as changing the past legislation so as to extend leaves of absence to temporary employés. It cannot in reason be argued that Congress, in reënacting the legislation in question, did not have in mind the class of employés entitled to leaves of absence, since in the act of 1895 it expressly reproduced the exception making a class of temporary employés— those regularly employed on the Congressional Record—beneficiaries of the leave of absence legislation, and excluded from the class of temporary employés so benefited those not regularly employed in such temporary work. When it is considered that the language thus reënacted had been construed by the Public Printer, the officer charged with the execution of the previous statutes, for nearly ten years, as excluding temporary employés other than the particular class of such employés referred to in the statute, viz., those regularly employed on the Congressional Record, it follows that the reënactment of the previous laws carried with it the settled administrative construction which had prevailed in their enforcement from the beginning. Here again it cannot in reason be said that the mind of the lawmaker did not address itself to the necessity of making a change in the previous laws where one was deemed necessary, since the act as reënacted not only goes over the ground covered by the progress of the statutes since 1886, and reënacts the legislative steps manifested in such progress, but also adds a new provision concerning accumulations of leaves of absence not contained in any prior statute.

When the deficiency appropriation act for the fiscal year ending June 30, 1895, was adopted on March 2, 1895, 28 Stat. 868, the provision found in the appropriation act of June 19, 1894, was substantially reiterated, except in some particulars not necessary to be noticed, with no words contained therein giving rise to the implication that there was any intention to alter the uniform rule which had obtained from the beginning respecting leaves of absence, excluding temporary employés from the benefit of such

leave, except the particular class of such employés enumerated in the previous statutes.

In the appropriation act for the year ending June 20, 1896, 28 Stat. 910, the sum set apart was simply " to enable the Public Printer to comply with the provisions of the law granting thirty days' annual leave to the employés of the Government Printing Office." Doubtless, any specific provision as to payment of *pro rata* leaves of absence to regular employés who had severed their connection with the service was omitted because of the general provision in the prior statute authorizing the use of leave of absence appropriations for the payment of *pro rata* leaves. In the act of June 11, 1896, making appropriations for the fiscal year of 1897, 29 Stat. 413, the same general language was used as contained in the previous act, making an appropriation applicable to payment of leaves of absence of employés in the Government Printing Office, but such provision was followed by a recapitulation of the previous statutes regulating the subject of leaves of absence to such employés, in the following language:

"The employés of the Government Printing Office, whether employed by the piece or otherwise, shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year under such regulations and at such times as the Public Printer may designate at the rate of pay received by them during the time in which said leave was earned; but such leaves of absence shall not be allowed to accumulate from year to year. Such employés as are engaged on piece-work shall receive the same rate of pay for the said thirty days' leave as will be paid to day hands : *Provided,* That those regularly employed on the Congressional Record shall receive leave, with pay, at the close of each session, *pro rata* for the time of such employment: *And provided further,* That it shall be lawful to allow pay for *pro rata* leave to those serving fractional parts of a year ; also to allow pay for *pro rata* leave of absence to employés of the Government Printing Office in any fiscal year, notwithstanding the fact that thirty days' leave of absence, with pay, may have been granted to such employés in that fiscal year on account of service rendered in a previous fiscal year.

And the Public Printer is hereby authorized to pay to the legal representatives of any employés who have died during the fiscal years of eighteen hundred and ninety-four, eighteen hundred and ninety-five, eighteen hundred and ninety-six, or may hereafter die, who have or hereafter may have any accrued leave of absence due them as such employés, and said claims to be paid out of any unexpended balances of appropriations for the payment of leaves of absence to the employés of the Government Printing Office, for the fiscal years eighteen hundred and ninety-four, eighteen hundred and ninety-five, eighteen hundred and ninety-six, and out of any future appropriations for leaves of absence."

It is language contained in the provision just quoted which the Court of Claims found to be new, and constrained it to decide that a temporary employé who had not been allowed leave of absence was nevertheless entitled to pay therefor by way of commutation. We do not stop now to consider that question, as we are not presently concerned with it. Now, an analysis of the act of 1896 discloses nothing which lends support to the argument that, in reiterating the previous law in this appropriation act, it was the intention of Congress to depart from the rule applied from the beginning by conferring the right to leave of absence on a mere temporary employé. On the contrary, this statute—like the previous ones—reiterates the exception in favor of a particular class of temporary employés, and by its silence is a further manifestation of the approval by the lawmaking power of the construction of the previous statutes resulting from the rule adopted by the Public Printer from the beginning, excluding temporary employés from the right to leave. And this recapitulation again demonstrates that the mind of Congress was addressed to the necessity of making such changes as it deemed wise, since there is a new provision allowing the legal representatives of deceased employés who were entitled to a leave to recover the amount due therefor.

From the review of the statutes which we have just made, our conclusion is that the assumption that temporary employés of the Government Printing Office were entitled to leave, upon which the decision of the lower court necessarily rests, was

mistakenly made, and therefore the judgment below was erroneous, unless it be that the plain text of the statutes, reiterated time and time again, and settled by years of administrative construction, is to be disregarded, in consequence of what is asserted to be a Congressional interpretation to the contrary, arising from an act passed in 1897, and the retroactive effect which it is claimed must necessarily follow as the result of this law and as a consequence of the fifth finding which the court below made.

To the contrary, we think an analysis of the matters relied upon serves but to confirm the construction which we have given to the acts of Congress which we have previously reviewed. In 1896, in the first session of the Fifty-fourth Congress, a resolution was passed by the Senate calling upon the Public Printer for information concerning the employés in the Government Printing Office who had failed to receive their annual leaves of absence during the fiscal years of 1890, 1891, 1892, 1893 and 1894, and asking a statement of the amount due each person therefor. Temporary employés during the years named could not have been included in the purposes of the resolution, since the general appropriation act passed at that very session contained the provision to which we have heretofore referred, reënacting the leave of absence laws, containing no repudiation of the rule prevailing from the beginning excluding temporary employés from the right to leave of absence. To conceive that the inquiry concerned leaves not granted to temporary employés would be to assume that inquiry was made as to a class of employés who had been deprived of their right to leave of absence in the past, whilst at the same time such employés, by the reënactment of the previous laws and the approval of the previous rule governing the Printing Office, had been declared at that session not to be entitled to such leave. Moreover, the fact that the resolution did not reach other years than 1890 to 1894 shows that it was not the denial of leave of absence to temporary employés which had been complained of and as to which the resolution made inquiry, because undoubtedly temporary employés had not received a leave of absence, not only prior to 1890, but also subsequent to 1894 and

up to the time of the passage of the resolution. If the denial of leave to temporary employés had been the subject of the inquiry, it would have been concerning the past and existing evil, and not to a mere fraction thereof.

The reply of the Public Printer to the resolution was made at the following session of Congress, in 1897, and practically consisted of a transmittal of a report to the Public Printer made by the cashier of the Government Printing Office, which was printed by the Senate as a public document, Sen. Doc. 59, 54th Congress, 2d Sess., and is largely reproduced in the brief of counsel for the appellee. The report, instead of confining itself to the years from 1890 to 1894, both inclusive, which were inquired about, proceeded to call attention to the subject of unpaid leave of absence claims prior to the year 1890, as follows:

"In view of the anticipated legislation looking forward to the liquidation of the unpaid leave of absence claims of present and former employés of this office, as indicated by Senate resolutions, it would seemingly appear in the interest of justice, and equity that the scope of such legislation should not be limited or confined simply to the fiscal years of 1890 to 1894, inclusive, but that its provision should also embrace such accrued and unpaid leave of absence claims which were also lost and forfeited during the fiscal years of 1887, 1888 and 1889, and to that end I would respectfully submit for your further consideration a supplemental statement, in detail covering such leaves of absences as were unpaid in the fiscal years of 1887, 1888 and 1889."

This was followed by a statement of the amount which would be needed to pay such prior claims.

Now, it cannot be that the report had in view the refusal to give leave or pay for leave to merely temporary employés, since such claims, if they existed, would have covered a much longer period than that embraced in the report. It could not moreover have covered such claims, inasmuch as at that very time such leaves were not being allowed and could not be allowed under the rules of the office. What the report contemplated was loss of leave in the past sustained by permanent employés of the Government Printing Office, through a con-

struction of the statute which no longer obtained or for failure of appropriations in particular fiscal years or other cause. Acting upon the report, an act was passed by Congress, which became a law on July 19, 1897, 30 Stat. 134, authorizing the Public Printer to pay employés, former employés and the legal representatives of deceased former employés of the Government Printing Office such sums as may be due said employés and former employés, for accrued and unpaid leaves of absence for the fiscal years 1887 to 1894, both inclusive, and appropriating a sum of money therefor.

Now we think from what has already been said concerning the resolution of inquiry; and the report made in answer thereto, which were the foundations of the act in question, that it is impossible to construe this act as at all affecting temporary employés without assuming that both Congress and the Public Printer, and indeed everybody concerned, were engaged at one and the same time in rectifying a wrong and in perpetuating the wrong for the future. The act, however, lends itself to no such deduction. Its provisions become clear, when the review of the legislation which we have made is considered. From that review it results that the exclusion of temporary employés from the right to leave of absence had prevailed from the beginning, and the rule so excluding had been ratified and approved by Congress over and over again, whenever it considered the subject. But it was also true that, from 1886 to 1894, in which latter year the legislation as to leave of absence in the Government Printing Office crystallized, except as to a minor provision, added by the law of 1896, Congress had been called upon in each successive step when it considered the subject to broaden in favor of the permanent employés entitled to leave, the construction placed upon its prior action on the subject. Thus, permanent employés, at each successive consideration by Congress of the subject, had become entitled thereafter to leaves of absence, which had been denied the employés prior thereto. And the purpose of the appropriation act of 1897 was first, as an act of grace to equalize this condition where it had resulted from a change of legislation, and, second, by an act of justice to provide for the cases, where, by

lack of appropriations, which the review we have made shows may have sometimes been the case, leaves of absence to permanent employés had not been provided for.

Without going into detail, it suffices to say, we repeat, that the confining of the appropriation in the act of 1897 to the years covered by the act, causes the conclusion just stated we think to be irresistible, since it conflicts with the conception that the act was intended to or did embrace temporary employés who had been denied leave from the beginning, including the period down to the time of the passage of the appropriation act in question.

It remains only to consider the fifth finding made by the court below. When the text of that finding is analyzed, we think it but embodies an inference of law deduced by the court from its consideration of the report of the Public Printer made in answer to the Senate inquiry and the court's construction of the provisions of the act of 1897. But the matters from which such legal inference was drawn, as we have seen, are in conflict with the import which we have given them. For instance, the language quoted in the finding and taken from the letter of the Public Printer in answering the resolution of inquiry of the Senate heretofore referred to, in full is as follows:

" Your attention is also called to the fact that during the fiscal years of 1890 to 1893, inclusive, many employés whose terms of service in the office were only for periods of less than one year have never received any *pro rata* leave of absence, with pay, which appears to have been the practice of the office during that period."

The construction adopted by the court below that this clause necessarily referred to temporary employés is dispelled by the history of the legislation and practice to which we have referred. That clause embraced only the permanent employés during the years in question to whom leave of absence had not been given, owing to the construction prevailing at the time named, which was either departed from by express changes made in subsequent acts of Congress, or by a construction thereafter placed upon the same. This is the result of the concluding words of the passage relied on, viz., " which appears to

have been the practice of the office during that period," excluding therefore temporary employés, since not only at that period but at all times from the beginning, and at the time the report was made, temporary employés were excluded from a right to leave of absence by the express rule of the office. If we were to treat the finding as one of fact, in view of the history of the legislation, the absence of any appropriation at any time to pay temporary employés for leaves of absence, the ever presence of the rule forbidding leave to such employés, and the findings as a whole of the court below, and what we deem to be the only implication deducible from the act of 1897, and the communication upon which the court below rested its construction, we should be obliged to say that the ultimate fact which the fifth finding embodies is not consistent with the other findings, and is not entitled to weight.

Our conclusion that temporary employés are not entitled to leaves of absence under the acts of Congress renders it wholly unnecessary to consider the second question which we at the outset proposed, that is, whether, if such employés were entitled to leave with regular pay, they had a claim for pay without leave against the United States because of the rule adopted for the government of the Printing Office by which no leave was allowed. However, whilst not deciding this question, we deem it our duty to direct attention to the fact that the significance which the court below attached to the language found in the act of 1896, and the statement that that language was new in the legislation on the subject, was, we assume, caused by overlooking the various appropriation acts between 1888 and 1894, which the court did not allude to in its opinion, where the language in question is to be found.

*The decree of the Court of Claims is reversed, and the cause is remanded to that court with directions to dismiss the claimant's petition.*