Peelle, J.,
delivered the opinion of the court:
The claimant, a regular or permanent employee in the Government Printing Office from May 26, 1888, to August 13, 1902, except for a brief interval in the year 1891, seeks to recover for the Sundays which intervened during the time of the several leaves of absence granted to him by the Public Printer after May 18, 1889, under the statutes then in force, the first two of which were enacted June 30, 1886 (24 Stat. L., 91) and August 1, 1888 (25 Stat. L., 352).
The act of 1886 reads as follows:
‘ ‘ That the employees of the Government Printing Office, whether employed by the piece or otherwise, be allowed a leave of absence, with pay, not exceeding fifteen days in any one fiscal year, after the service of one year and under such regulations and at such times as the Public Printer may designate. Such employees as are engaged on piecework shall receive the same rate of pay for the said fifteen days’ leave as will be paid the day hands: Provided, That those regularly employed on the Congressional Eecord shall receive leave, witn pay, at the close of each session, pro rata for the time of such employment.
“ Sec. 2. That this act shall take effect on and after the first day of July, eighteen hundred and eighty-six.”
*49 The act of 1888 reads:
“That the act entitled ‘An act granting leave of absence to employees of the Government Printing Office,’ approved June thirtieth, eighteen hundred and eighty-six, be so amended as to extend the annual leave of absence therein described to thirty days in each fiscal year; provided that it shall be lawful to allow pro rata leave to those serving fractional parts of a year.”
It will be noted that the latter act, at least in so far as relates to the subject under consideration, merely extends the time of leave from fifteen to ‘‘ thirty days in each fiscal year;” and in referring to this latter act the Supreme Court in the case of United States v. Barringer (188 U. S., 577, 583) said:
“ Clearly this act was but an amendment of the act of 1886, and did not attempt to repeal that act or to extend its benefits to classes of employees not embraced by the prior act. Its object on its face was simply to extend the period of leave of absence from fifteen to thirty days and to confer upon the permanent employees who were entitled .to leave, in accordance with the terms of the previous act, an additional right to enjoy the benefits of a pro rata leave, if thereafter thejr severed their connection with the service before they had completed another entire year’s service so as to be entitled to that year’s leave.”
Those two statutes were also considered by this court in the case of Harrison v. United States (26 C. Cls. R., 259), where the question of the claimant’s right to pay for Sundays which intervened during his leave of absence was considered, and a decision reached adverse to the claimant.
The question there presented was,, as stated by the court, “whether the words of the statute, ‘a leave of absence with pajq’ refer to the pay which the recipient would have received during the period of absence if he- had not been absent, or whether they mean that he should receive pay during his absence for Sundays — i. e., for days which were not working days and for which the other men not on leave received no pay.”
In answering that question the court, among other things, said:
“The Public Printer must determine the times and seasons and periods of absences as the needs or exigencies of his *50 department may permit. But at this ]ioint his discretion stops and the supervision of the accounting officers begins. He has jurisdiction of attendance and work, to grant leaves of absence or refuse them, but not to increase wages or vary or augment the legal liabilities of the Government. Whether he grant leaves of absence by the month or the week, or for a single day, or for a designated number of days, or not at all, will not affect the wages of the employees; wages are not within the scope of his discretion and will continue precisely the same as if no leave of absence had been granted or refused. This subject of the leave-of-absence laws is not wages, but work; they authorize the-Public Printer to lessen work; they do not authorize him to augment pay. * * * In the opinion of the court the leave-of-absence laws do not affect wages. The legislative purpose is that wages shall continue, neither diminished nor augmented, just as if no leave-of-absence law had been enacted. Taking all of the statutes and the common-law usage together as constituting a legal system controlling the Government Printing Office, it comes to this: That it is the intent of the law making power that an employee shall not work more than eight hours in one day, nor more than six days in one week, nor more than eleven months in one year; and that he shall not be paid more than the prescribed rate of wages.
“In the case of men employed on piecework, such as compositors, the same rule will govern their right to compensation when absent. The statute then commutes their earnings at $3.20 a day, and their employment becomes, during .the period of leave, as if it were time work. Should the Public Printer grant no leave of absence, they will continue to get what they earn; should he grant a leave of absence for a month, a week, or a day, or a number of days, they will get, in lieu of what they would have earned, precisely what a time worker will be getting for his work during that identical period of absence.”
Such was the holding in that case, denying the right of payment, under the act of 1886 and 1888, for the Sundays forming part of the leaves of absence.
Since that decision section 23 of the act of January 12, 1895 (28 Stat. L., 604), and the act of June 11, 1896 (29 Stat. L., 453), have been enacted, the first of which reads:
“Sec. 23.' The employees of the Government Printing-Office, whether employed by the piece or otherwise, shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year under such regulations and at such times as the Public Printer may designate, at the *51 rate of pay received by them during the time in which said leave was earned; but'such leaves of absence shall not be' allowed, to accumulate from year to year. Such employees as are engaged on piecework shall receive the same rate of pay for the said thirty days’ leave as will be paid to dajr hands: Provided', That those regularly employed on the Congressional Record shall receive a leave, with pay, at the close of each session, pro rata for the time of such employment: And provided further, That it shall be lawful to allow pro rata leave to those serving fractional parts of a year.”
The act of 1896 reenacts the foregoing section without change, except in the last proviso, and then adds additional paragraphs, but neither the change nor the additional paragraphs affect in any way the question here involved.
The question presented for our consideration — conceding the correctness of the decision in the Harrison case — is, whether the act of 1895 embodies any new or materially different legislation on the subject concerning payment for Sundays occurring within the period of the leaves of absence from that found in the acts of 1886 and 1888.
The original act (that of June 30, 1886, allowing for the first time leaves of absence with pay to those employed in the Government Printing Office) provided that the employees “be allowed a leave of absence with pay, not exceeding fifteen days in any one fiscal year, after the service of one year and under such regulations and at such times as the Public Printer may designate;” while the act of 1888, as has been said and held, was amendatory of the act of 1886 in that it extended “the annual leave of absence therein described to thirty days in each fiscal year.”
Those statutes were substantially reenacted in section 23 of the act of June 12, 1895 (supra), the material words of which are that the employees of the Government Printing Office “shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year, under such regulations and at such times as the Public Printer may designate, at the rate of pay received by them during the time in which said leave was earned.”
The claimant’s contention is that the words of the statute are clearly expressed, free from doubt, and therefore need no interpretation; and, furthermore, he contends that since the decision in the Harrison case there have been legislative *52 interpretations of the meaning of the acts of 1886 and 1888; .and in support of this latter contention we are referred to sundry appropriation acts, the first of which is that of June 19, 1894 (28 Stat. L., 94), making an appropriation of $65,000—
“to enable the Public Printer to pay the employees heretofore or now employed in the Government Printing Office since July first, eighteen hundred and ninetj^-three, such sums as may be due them for leaves of absence, notwithstanding the fact that thirty days’ leave of absence, with pay, had been granted to such persons in said fiscal year on account of serf-ices rendered in the preceding fiscal year, and also to pay all employees of the said office any leave of absence which they may have have failed to obtain from lack of necessary appropriations or other cause.”
Sundry other acts are. referred to making appropriations “to enable the Public Printer to comply with the provisions of the law granting thirtj’’ da3?s’ annual leave to the employees of the Government Printing Office ” and to pay for leaves of absence which they had failed from the lack of necessaiy appropriations or other cause to obtain; and stress is laid on the language authorizing payment to such employees for leaves of absence which the3f ma3r have failed to obtain. But we are unable to see that these appropriation acts in any wa3T give a different meaning to the acts of 1886 and 1888 from that given them by the court in the Harrison case.
The Congress, by the appropriation acts mentioned, were not dealing with the question as to the extent of the leaves of absence, but with the question of payment for such leaves of absence as the employees were then entitled to under the law, some of whom had been granted leaves of absence, as the act quoted indicates, in one year for services rendered the preceding fiscal year, while others had failed to obtain any leave at all.
And this view is in harmony with the later appropriation acts, beginning* with the one of March 2, 1889 (25 Stat. L., 980), and extending to the acts of March 3, 1899 (30 Stat. L., 1120), and March 3,1903 (32 Stat. L., 1146), which, in express terms, provide that appropriations are made “to enable the Public Printer to comply with the provisions of the law granting thirty days’ annual leave to the employees of the Government Printing Office.”
*53 Thus we see that the Congress did not, by the language used in any of the appropriation aets referred to, relieve the Public Printer from the duty of complying with the provisions of the law granting leaves of absence “ under such regulations and at such times as he might designate,” and these last appropriations were made since the passage of the act of 1895.
The claimant insists, aside from the legislative interpretation of the acts of 1886 and 1888, by the language of the appropriation acts referred to, that whatever doubt may have existed prior to the passage of the act of 1895 has been settled by the new language used in section 23 of that act.
Under the acts of 1888 and 1888 the Public Printer was authorized to allow the employees “a leave of absence with pay not exceeding thirty days in any one fiscal year,” while the act of 1895 provides that they “ shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year.” The words “shall” and “to the extent of” in italics do not appear in the ac.ts of 1886 and 1888, though the words “not exceeding thirty days” do, and they are retained in the act of 1895.
But, if we • should concede, as the claimant contends, that under the act of 1895, when leave has been earned, the language, “shall be allowed leaves of absence with pay to the extent of not exceeding thirty days,” is mandatory, the question of pay for the Sundays intervening would not thereby be eliminated. In other words, in respect to pay for the Sundays forming part of the leaves granted, does the act of 1895 differ from the acts of 1886 and 1888 ?
In the Harrison case the words “ not exceeding thirty days,” as used in the acts of 1886 and 1888, were construed to mean that “the Public Printer must determine the time and seasons and periods of absences as the needs or exigencies of his department may permit,” thus leaving in that officer the discretion to determine when and to what extent (not exceeding-thirty days) the employees shall be allowed leaves of absence in any one fiscal year.
If the Congress bythe act of 1895 had intended to authorize the Public Printer to allow leaves of absence with pay for thirty days, no more and no less, it is difficult to understand *54 why the words “to the extent of not exceeding thirty days” were used. We think the obvious meaning of that language, in its setting in the act, is that the Public Printer is authorized to exercise his discretion in granting leaves of absence, both as to the extent thereof (not exceeding thirty days) and when, depending upon the needs and exigencies of the service intrusted to his charge.
If this be the correct view, then the act of 1895 does not differ in legal effect from the acts of 1886 and 1888, and the decision in the Harrison case, which has been followed for more than ten years, both by the Public Printer and the accounting officers, is controlling.
When a leave of absence for thirty days has been granted by the Public Printer, as he may do, does that carry with it the right to pay for the Sundays covered by such leave? Clearly if the claimant instead had remained at work (during that period) he would not, except in cases of emergency, have been paid for any but days recognized as ordinary working days. That being so, shall a different rule prevail respecting the Sundays which may intervene during the leaves of absence ?
It is manifest that to apply a different rule to an employee when on leave would give him more pay for the same period of time than he would have been entitled to had he remained at work. This, we think, would contravene both the spirit and the letter of the act, which provides that such leaves of absence, not exceeding thirty days, shall be allowed “in any one fiscal year.” That is to say, the employees can only claim under the act leaves of absence with pay to the extent of not exceeding thirty days “in any one fiscal year,” and then only when ■ they have earned such leave by working eleven-twelfths of the fiscal year, or, as held in the Harrison case, “eleven months in one year.” That done, the employees may be granted thirty days’ leave “ at the rate of pay received by them during the time in which such leave was earned. ” That does not mean the extra pay which they may have received for extra work on Sundays in cases of emergency authorized by the act of January 12,1888 (22 Stat. L., 402), but at the rate of pay received by them for the ordinary working days during that period. In other words, the extent of. the employees’ leaves of absence must be measured by the *55 extent of their work during the year in which the leaves are earned, in the proportion of one to eleven, and they are entitled to the same rate of pay for the days when on leave they received for like days when at work.
The purpose of the act of 1895, as held in the Harrison case respecting the acts of 1886 and 1888, was not to increase wages, but to decrease work; and if that be so, then we should not construe the act so as to increase wages during the leaves of absence, and having reached this conclusion we need not say more.
For the reasons given the petition must be dismissed..