**FIELD v. GIEGENGACK, Public Printer.**

**No. 6223.**

United States Court of Appeals for the District of Columbia.

Submitted Oct. 2, 1934.

Decided Nov. 5, 1934.

William E. Leahy, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and John J. Wilson, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from an order of the Supreme Court of the District overruling a demurrer to the answer of the public printer to a petition for a writ of mandamus.

The writ is sought to require the public printer to grant certain leave to an employee of the Government Printing Office, where the petitioner is a proofreader and the respondent, as public printer of the United States, is the administrator. The petitioner contends that the public printer denies him certain leave to which he is lawfully entitled but which is refused under the supposed authority of the Economy Act § 101 et seq. (chapter 314, 47 Stat. 399 [5 USCA § 673 note]), which is attacked as unconstitutional in so far as it undertakes to prohibit such leave. The parties agree that the subject-matter is controlled by section 1 of the act of June 11, 1896 (chapter 420, 29 Stat. 453, section 45, tit. 44, U. S. C. [44 USCA § 45]), as modified, if at all, by the Economy Act and its amendments. The question, therefore, is to what extent the Economy Act, as amended, affects the codified provisions controlling such leave. The public printer contends that it expressly prohibits him from granting the leave requested; the petitioner claims that, if it does, it is unconstitutional, as violating the Fifth Amendment by taking private property for public use without compensation. The petitioner thus puts his case ultimately on the proposition that his leave with pay from the Government Printing Office is a property right, which Congress can neither take away, reduce, nor suspend without compensation, after it has once accrued under pre-existing statutes, regulations, and practice.

Section 1 of the Act of June 11, 1896 (c. 420, 29 Stat. 453, section 45, tit. 44, U. S. C. [44 USCA § 45]), provides:

"*Leaves of Absence.* The employees of the Government Printing Office, whether employed by the piece or otherwise, shall be allowed leaves of absence with pay to the extent of not exceeding thirty days in any one fiscal year under such regulations and at such times as the Public Printer may designate at the rate of pay received by them during the time in which said leave was earned; but such leaves of absence shall not be allowed to accumulate from year to year. Such employees as are engaged on piecework shall receive the same rate of pay for the said thirty days' leave as will be paid to day hands. It shall be lawful to allow pay for pro rata leave to those serving fractional parts of a year; also to allow pay for pro rata leave of absence to employees of the Government Printing Office in any fiscal year, notwithstanding the fact that thirty days' leave of absence, with pay, may have been granted to such employees in that fiscal year on account of service rendered in a previous fiscal year. The Public Printer is authorized to pay to the legal representatives of any employees who may die, and may have any accrued leave of absence due them as such employees, said claims to be paid out of any appropriations for leaves of absence."

Section 215 of the Economy Act[1] (Act of June 30, 1932, c. 314, 47 Stat. 399, 407 [5 USCA § 30a]) provides, in part: "After June 30, 1932, no civilian officer or employee of the Government who receives annual leave with pay shall be granted annual leave of absence with pay in excess of fifteen days in any one year, excluding Sundays and legal holidays: Provided, That the part unused in any year may be cumulative for any succeeding year. * * *"

Section 103 of the Economy Act of 1932 (5 USCA § 673 note) provides that: "All rights now conferred or authorized to be conferred by law upon any officer or employee to receive annual leave of absence with pay are hereby suspended during the fiscal year ending June 30, 1933." This provision was repealed by section 4 (d) of the Act of March 20, 1933 (c. 3, 48 Stat. 12 [5 USCA § 673 note]), the repeal to be effective April 1, 1933.

The result of these statutory changes is that the usual thirty days' leave of absence with pay, but not cumulative from year to year, grantable to employees of the Government Printing Office before the Economy Act, was suspended for part of the fiscal year 1933 —that is, from July 1, 1932, to April 1, 1933; but restored thereafter to the extent of 15 days per annum, cumulative from year to year. This reduction of 15 days in his leave, the petitioner contends, was beyond the constitutional power of Congress to make, because it took from him without compensation a contractual right of property which had accrued to him under a prior act of Congress.

But it has long been settled in this country, with certain constitutional exceptions not here involved, that a public office is not property within the constitutional guaranty; that the emoluments thereof are subject to legislative modifications and control; and, in the words of Chief Justice Fuller, "generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." Taylor and Marshall v. Beckham (No. 1), 178 U. S. 548, 577, 20 S. Ct. 890, 901, 44 L. Ed. 1187.

In Crenshaw v. United States, 134 U. S. 99, 108, 10 S. Ct. 431, 434, 33 L. Ed. 825, the Supreme Court said: "The great question of protection to contract rights and vested interests, which forms such an interesting and important feature of our constitutional law, is not dominated by the turn of a phrase. Our courts, both state and national, look on these questions through the form to the substance of things; and, in substance, a statute under which one takes office, and which fixes the term of office at one year, or during good behavior, is the same as one which adds to those provisions the declaration that the incumbent shall not be dismissed therefrom. Whatever the form of the statute, the officer under it does not hold by contract. He enjoys a privilege revocable by the sovereignty at will, and one legislature cannot deprive its successor of the power of revocation." See, also, Newton v. Commissioners of Mahoning County, 100 U. S. 548, 25 L. Ed. 710; Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079; Blake v. United States, 103 U. S. 227, 26 L. Ed. 462; O'Reilly de Camara v. Brooke, 209 U. S. 45, 28 S. Ct. 439, 52 L. Ed. 676; Sanchez v. United States, 216 U. S. 167, 30 S. Ct. 361, 54 L. Ed. 432; Weeks v. U. S. ex rel. Creary, 51 App. D. C. 195, 277 F. 594; People v. Morris, 13 Wend. (N. Y.) 325; Commonwealth v. Bacon, 6 Serg. & R. (Pa.) 322; Barker v. Pittsburgh, 4 Pa. (4 Barr) 51.

---

[1] The temporary provisions of the Economy Act affecting leaves of absence, etc. (Act of June 30, 1932, c. 314, 47 Stat. 399), as amended by the Act of March 3, 1933, c. 212, title 2, 47 Stat. 1513, and the Act of March 20, 1933, c. 3, 48 Stat. 12, appear in 5 USCA § 673 note, pp. 47–56.

■ If the office itself is not a contractual property right, but a revocable privilege, leave of absence from the office can be no more, and, since the intention of Congress to suspend such leave in this instance, and, later, to restore it on stated conditions, is plainly expressed, it is clearly binding upon the public printer and the courts.

Furthermore, the petitioner does not bring himself within the statute which he sets up as the basis and measure of his right, and which he asserts to be beyond the power of Congress to modify to his detriment. For that statute provides that the "leaves of absence shall not be allowed to accumulate from year to year." Section 1 of the Act of June 11, 1896 (chapter 420, 29 Stat. 453, section 45, tit. 44, U. S. C. [44 USCA § 45]). Under this provision and the regulations and practice which he relies on in his petition, his leave must have been requested, granted, and used during the fiscal year 1933, since it accrued during the fiscal year 1932.

But the record shows that he asked for, was granted, and used only 14¼ days' leave during the fiscal year 1933, and that the further leave of 14¼ days here in question was not sought until September 11, 1933, and was denied September 13th, which was not within the fiscal year 1933, but more than two months after the expiration thereof on June 30, 1933. So that, even if it could be conceded that, so far as the petitioner is concerned, the statute relied on survived the repeal or suspension thereof by Congress, the petitioner's application for its benefits came too late to be allowed.

A leave of absence with pay bears more analogy to a pension than to a wage, and no pensioner has a vested legal right to his pension, which is a bounty of the government that Congress may give, withhold, reduce, or recall at its discretion. Walton v. Cotton, 19 How. 355, 15 L. Ed. 658; United States v. Teller, 107 U. S. 64, 68, 2 S. Ct. 39, 27 L. Ed. 352.

■■ Such leave was first granted employees of the Government Printing Office by the Act of June 30, 1886 (24 Stat. 91), since which time numerous amendments and modifications thereof have been enacted, many of which are discussed in the opinion of Mr. Justice White in United States v. Barringer, 188 U. S. 577, 23 S. Ct. 405, 47 L. Ed. 602. Under these statutes, leave of absence tentatively accrues to a beneficiary by virtue of his service, yet is not earned in the sense that his wage is earned, which becomes absolutely due and inevitably payable upon his performance of his work.

But the leave must be specially sought, granted, and used, under certain conditions and within certain times, determined within the statutory maximum and regulations, by the public printer, with due regard to the needs of the service and justice to the individual. The nature of this leave is well described by the Court of Claims in Harrison v. United States, 26 Ct. Cl. 259, 270: "The law imposes both the duty and the responsibility of granting or refusing leaves of absence exclusively upon the Public Printer. It is his duty to administer the statute according to its spirit and intent and with a proper regard to the just interests of both parties. He is authorized to administer it by 'regulations,' and may prescribe general rules which would practically exclude individual applications. He may make the leave of absence dependent upon good conduct, and in the exigency of pressing work, when other employees could not be procured, he would be justified in refusing it altogether. The employee has no legal right to a leave of absence until it be granted, and can no more dictate when he will take his vacation than a student in college or a boy in school. The Public Printer must determine the times and seasons and periods of absences as the needs or exigencies of his department may permit."

And again in Taylor v. United States, 39 Ct. Cl. 43, 53, the court said: "If the Congress by the act of 1895 had intended to authorize the Public Printer to allow leaves of absence with pay for thirty days, no more and no less, it is difficult to understand why the words 'to the extent of not exceeding thirty days' were used. We think the obvious meaning of that language, in its setting in the act, is that the Public Printer is authorized to exercise his discretion in granting leaves of absence, both as to the extent thereof (not exceeding thirty days) and when, depending upon the needs and exigencies of the service intrusted to his charge."

If the public printer may so regulate or reduce this leave because of a local exigency of his service, a fortiori the Congress, in a national emergency, may reduce or suspend it as it may deem necessary.

■ This proceeding is brought on behalf of the petitioner and all others similarly situated, and no claim is made of personal discrimination against the petitioner or of arbitrary and capricious conduct by the public printer. But it has long been settled that the courts have no general supervising power over the proceedings of the administrative departments. Decatur v. Paulding, 14 Pet. 497, 599

948

Appx., 10 L. Ed. 559, 609; United States v. Black, 128 U. S. 40, 9 S. Ct. 12, 32 L. Ed. 354; United States v. Windom (Redfield v. Windom), 137 U. S. 636, 11 S. Ct. 197, 34 L. Ed. 811; United States v. Blaine (Boynton v. Blaine), 139 U. S. 306, 11 S. Ct. 607, 35 L. Ed. 183; Keim v. United States, 177 U. S. 290, 20 S. Ct. 574, 44 L. Ed. 774; United States ex rel. Taylor v. Taft, 24 App. D. C. 95; Longfellow v. Gudger, 57 App. D. C. 50, 16 F. (2d) 653.

And we are of opinion that the petitioner presents no case for a writ of mandamus; that his demurrer to the respondent's answer was properly overruled; and that the judgment he appeals from should be affirmed, and it is so ordered.